UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| ROGER ALLEN RUTZ, # 459944, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:14-cv-51 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| GAIL BURKE, D.O., et al., | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendants. | ) | |
| | ) | |

This is a civil rights action brought *pro se* by a state prisoner under 42 U.S.C. § 1983. Plaintiff's complaint concerns the adequacy of the medical care he received at the Richard A. Handlon Correctional Facility (MTU) in early 2012 after he broke his right clavicle (collar bone). He named four defendants: Gail Burke, D.O., Roger Gerlach, M.D., Harriet Squier, M.D., and Heidi Smith, R.N. Plaintiff alleges that defendants were deliberately indifferent to his serious medical needs in violation of his Eight Amendment Rights. Specifically, he alleges that defendants failed to follow an emergency room physician's discharge recommendations regarding sling use and scheduling an appointment with John, Putz, M.D. (Compl. at 2 and Exhibit B, Page ID 3, 32, 37). On February 10, 2012, Dr. Squier determined that no referral to an orthopedic surgeon was necessary. (Compl. at 2, 4 Page ID 3, 5). Plaintiff makes a general allegation that defendants put "things" in his medical record that were not true. (*Id.* at 3, Page ID 4). Plaintiff alleges that Nurse Smith "falsified" medical documents, did not schedule follow-up appointments, did not order "proper" slings, did not place plaintiff in a sling as required, and allowed plaintiff to be in pain without notifying a doctor regarding his complaints. (*Id.* at 2-4, Page ID 3-5). Plaintiff alleges that

he should have received more intensive treatment for a longer period. He seeks an award of damages and an injunction compelling "proper" medical care. (*Id.* at 5, Page ID 6).

The matter is now before the court on defendant Smith's motion for summary judgment based on the affirmative defense provided by 42 U.S.C. § 1997e(a) (docket # 13) and a motion for summary judgment on the merits by defendants Burke, Gerlach, and Squier (docket # 21). Plaintiff has filed his response. (docket #s 17, 25). For the reasons set forth herein, I recommend that defendants' motions be granted and that all plaintiff's claims against defendant Smith be dismissed without prejudice and that judgment be entered in favor of defendants Burke, Gerlach, and Squier on all plaintiff's claims.

## **Applicable Standards**

### A.     **Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pluck v. BP Oil Pipeline Co.*, 640 F.3d 671, 676 (6th Cir. 2011).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. FED. R. CIV. P. 56(e); *see Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see LaQuinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 335 (6th Cir. 2010).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden – the plaintiff on a claim for relief or the defendant on an affirmative defense – his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone*

*v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000)); *see Surles v. Andison*, 678 F.3d 452, 455-56 (6th Cir. 2012); *Cockrel*, 270 F.2d at 1056. Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

**B.    Standards Applicable to the Affirmative Defense of Failure to Exhaust Remedies**

Defendant Smith has asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies. A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies. 42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one. To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that, when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324–25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[1] In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470.

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance. The following is an overview of the grievance process. Inmates must first attempt to resolve a problem within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control. *Id.* at ¶ P. If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted resolution. *Id.* The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the *facts* involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted. *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

---

[1] A copy of the policy directive is found in the record. *See* docket # 14-2, Page ID 79-85.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent for grievances regarding health care issues is the Regional Health Administrator or the Administrator's designee. *Id .* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. The Grievance and Appeals Section forwards grievances regarding health care issues to the Administrator of the Bureau of Health Care Services (BHCS). The BHCS Administrator is required to ensure that the grievance is investigated and a response provided to the Grievance and Appeals Section in a timely manner. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*,

636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is an inmate serving lengthy prison sentences in the custody of the Michigan Department of Corrections (MDOC). Defendants Burke, Gerlach, and Squier are licensed physicians. (Gerlach Decl. ¶ 2, docket # 21-2, Page ID 157; Burke Decl. ¶ 2, docket # 21-3, Page ID 165; Squier Decl. ¶ 2, docket # 21-4, Page ID 169). Defendant Smith is a registered nurse.

On February 5, 2012, plaintiff slipped, fell, and injured himself. (Plf. Decl. ¶ 4, docket # 17, Page ID 126). Dr. Gerlach suspected that plaintiff had a broken right clavicle (collar bone). He ordered that plaintiff be transported outside the prison to a hospital for assessment and treatment. (Gerlach Decl. ¶ 7, Page ID 158; docket # 23, Page ID 195). Doctors at the hospital determined that plaintiff had no injury more serious than a broken clavicle and gave him pain medication. Joshua Vance, D.O., was the attending emergency room physician. (docket # 1-1, Page ID 28). Dr. Vance indicated that plaintiff should follow up with a primary care provider "PCP and or Dr. Putz [in] 1-2 days." (*Id.* at Page ID 30). Vance indicated that when plaintiff called Dr. Putz's office to make an appointment, he should notify Dr. Putz's secretary of the source of the referral. (*Id.* at Page ID 37;

docket # 25-1, Page ID 253). An emergency department nurse's notes indicate that he or she was unable to apply a sling because plaintiff was wearing restraints. The nurse's notes indicate that a sling was given to the transporting officers. This unidentified nurse wrote: "Report called to Heidi R.N. at MTU regarding follow up C orthopedic and sling application." (docket # 1-1, Page ID 32; docket # 25-1, Page ID 254). Plaintiff was transported back to prison. Nurse Smith placed plaintiff's arm a sling. She instructed him how to apply the sling himself and gave him instructions on proper use of the sling. Plaintiff was placed on "lay-in" status which exempted him from any work or prison duties for health reasons. In addition, plaintiff received a detail for ice to apply to his shoulder to help reduce th swelling. (Gerlach Decl. ¶ 8, Page ID 158; docket # 23, Page ID 198-99).

On February 6, 2012, additional x-rays were taken because the images taken at the hospital had not returned with plaintiff to prison. (Gerlach Decl. ¶ 10, Page ID 159; docket # 23, Page ID 202). A physician's assistant increased plaintiff's Ultram prescription in response to plaintiff's pain complaints. The ice detail was extended. (docket # 23, Page ID 204-09).

On February 10, 2012, plaintiff advised a physician's assistant that his medication made the shoulder pain tolerable and the prescription was continued. The physician's assistant contacted Dr. Squier for a consultation regarding whether plaintiff needed a referral to an orthopedic surgeon. Dr. Squier determined that a referral was not necessary because the fracture fragments were in contact and would heal without surgical intervention. (Squier Decl. ¶¶ 5-9, Page ID 170-71; Gerlach Decl. ¶ 10, Page ID 159; docket # 23, Page ID 213). Squier recommended use of a figure-8 sling to help line up the fracture fragments. The physician's assistant was able to obtain a figure-8 sling from

another prison, but when he attempted to put it on plaintiff, it was not large enough. (docket # 23, Page ID 213-15).

On February 13, 2012, Dr. Gerlach found that plaintiff's fracture was healing "great" and that plaintiff had a full range of motion with pain only at the extreme edges of range of motion. Plaintiff was informed that his collar bone had healed to the point where he should only be using a sling on an "as needed" basis. Dr. Gerlach continued plaintiff's Ultram prescription. (Gerlach Decl. ¶ 11, Page ID 160; docket # 23, Page ID 218-21). On February 17, 2012, a nurse checked on the status of plaintiff's clavicle. Plaintiff's pain was controlled with Ultram. Plaintiff had a "lump" in the mid-clavicle and some bruising around the area of his injury. He had no numbness or tingling in his hands and indicated that he wanted to return to his work detail. (docket # 23, Page ID 222-23).

On February 20, 2012, Dr. Gerlach found that plaintiff's injury showed "remarkable" improvement." He had a painless range of motion and the "hump" at the fracture site had significantly reduced in size. Plaintiff indicated that he wanted to return to his work assignment. Dr. Gerlach discontinued plaintiff's Ultram prescription and approved his return to work. (Gerlach Decl. ¶ 13, Page ID 160; docket # 23, Page ID 226). On February 29, 2012, Gerlach noted that plaintiff continued to show improvement. (Gerlach Decl. ¶ 14, Page ID 161; docket # 23, Page ID 232).

On March 21, 2012, Gerlach found that plaintiff's clavicle fracture was fusing and that he retained a full range of motion. (Gerlach Decl. ¶ 15, Page ID 161; docket # 23, Page ID 236-37). Plaintiff complained of various non-medical aspects of his incarceration. (Gerlach Decl. ¶ 15, Page ID 161).

On April 19, 2012, Gerlach found that plaintiff was extremely negative in his attitude at this appointment. Plaintiff's collar bone had healed to the point where the stronger, narcotic-like pain medication that plaintiff wanted was not medically indicated. Dr. Gerlach denied plaintiff's request for this medication.   (Gerlach Decl.¶¶ 16-17, Page ID 161-62, docket # 23, Page ID 240-242).

Dr. Burke was not involved in the treatment of plaintiff's clavicle injury. (Burke Decl. ¶ 6, Page ID 166).

Plaintiff received proper medical treatment for his injury. (Squier Decl. ¶ 5, Page ID 170; Gerlach Decl. ¶ 17, Page ID 161-62).

On May 14, 2012, MTU's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. MTU-12-05-5290-12D. (docket # 14-3, Page ID109; *see also* Plf. Decl. ¶ 9, docket # 17, Page ID 126-27).[2]   Plaintiff's grievance was as follows:

> I had broken my collar bone this past winter and was taken to the hospital (E.R.) room on Feb. 5th 2012. The doctor told me that I needed surgery to repair my collar bone. Nothing has been done about it. I was given an arm bracelet, but they didn't know how to put it on me. I [have] been having severe pain and the medication they prescribe[d] to me help[ed], but I was taken off the medication which help[ed] with the pain. Now I['m] still in pain and it[']s severe[,] sharp pain.

(docket # 14-3, Page ID109). Plaintiff's grievance was denied at Step I and Step II of the MDOC's grievance process. (Compl. Ex. A, docket # 1-1, Page ID 13-17, docket # 14-3, Page ID 107-09). On October 16, 2012, the Grievance and Appeals Section issued its decision rejecting plaintiff's grievance because the grievance had not been submitted within five business days after plaintiff had

---

[2]"Verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., Inc.*, 357 F. App'x 656, 662 (6th Cir. 2009); *see also Stine v. State Farm Fire & Cas. Co.*, 428 F. App'x 549, 550 (6th Cir. 2011) (A "conclusory affidavit bypasses the specific-facts requirement of Federal Rule of Civil Procedure 56 necessary to forestalling summary judgment.").

attempted to resolve the issue in the manner specified in the policy directive, there was no indication that plaintiff had attempted to resolve the issue before filing his grievance, and although plaintiff identified the date of the incident as February 5, 2012, he waited until May 2012 to file his grievance. (docket # 1-1, Page ID 18; docket # 14-3, Page ID 105). On January 15, 2014, plaintiff filed this lawsuit.

## Discussion

A.  Doctors Burke, Gerlach, and Squier

Plaintiff alleges that Doctors Burke, Gerlach, and Squier were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights under the Cruel and Unusual Punishments Clause. In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n. 4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard. Under *Wilson*, a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component). 501 U.S. at 298. The Supreme Court held in *Farmer v. Brennan*, 511 U.S.

825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness. A prison official cannot be found liable for denying an inmate humane conditions of confinement "unless the official knows of and disregards an excessive risk to inmate health or safety." 511 U.S. at 837. The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> The subjective component, by contrast, requires a showing that the prison official possessed a sufficiently culpable state of mind in denying medical care. Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result. The prison official's state of mind must evince deliberateness tantamount to intent to punish. Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference. Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted). Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims which sound in state tort law. *See Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011); *Westlake*, 537 F.2d 860 n. 5; *see also Reed v. Speck*, 508 F. App'x 415, 419 (6th Cir. 2012) ("The subjective component is intended 'to prevent the constitutionalization of medical malpractice claims.' ") (quoting *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009)).

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs. There is no evidence of any deficiency in his medical care. Plaintiff's disagreement with the treatment provided by defendants falls far short of supporting an Eighth Amendment claim. *See e.g., Kosloski v. Dunlap*,

347 F. App'x 177, 180 (6th Cir. 2009); *Hix v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 357 (6th Cir. 2006).

I find that defendants Burke, Gerlach, and Squier are entitled to judgment in their favor as a matter of law on all plaintiff's claims.

C. Nurse Smith

Defendant Smith has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against her as required by 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Woodford*, 548 U.S. at 85. "[N]o unexhausted claim may be considered." *Jones v. Bock*, 549 U.S. at 220. Plaintiff did not properly exhaust any claim against defendant Smith before he filed this lawsuit.[3] I find that defendant Smith has carried her burden on the affirmative defense is entitled to dismissal of all of plaintiff's claims against her.

**Recommended Disposition**

For the foregoing reasons, I recommend that defendants' motions for summary judgment (docket #s 13, 21) be granted and that all plaintiff's claims against defendant Smith be dismissed without prejudice and that judgment be entered in favor of defendants Burke, Gerlach, and Squier on all plaintiff's claims.

Dated: March 3, 2015          /s/ Phillip J. Green
                              United States Magistrate Judge

---

[3] A prisoner cannot file his lawsuit first and then exhaust his administrative remedies after-the-fact. *See Garren v. Prisoner Health Servs.*, No. 11-14650, 2012 WL 4450495, at * 2 (E.D. Mich. Aug. 6, 2012); *Rhinehart v. Scutt*, No. 2-10-cv-10006, 2011 WL 679699, at * 5 (E.D. Mich. Jan. 14, 2011); *Ross v. Duby*, No. 1:09-cv-531, 2010 WL 3732234, at * 1 (W.D. Mich. Sept. 17, 2010).

## **NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b). Failure to file timely and specific objections may constitute a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008). General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).